# United States Court of Appeals

*for the*

# Third Circuit

Case No. 24-1793

CARL WILLIAMS,

*Appellant,*

– v. –

LINODE LIMITED LIABILITY CO, DBA Linode LLC; LINODIAN LLC, DBA Linode LLC; DANIEL SPATARO; THOMAS ASARO

*Defendants-Appellees.*

ON APPEAL FROM AN ORDER OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## BRIEF FOR DEFENDANTS-APPELLEES

JONATHAN R. CAVALIER
STEPHANIE J. PEET
TIMOTHY M. MCCARTHY
JACKSON LEWIS P.C.
*Attorneys for Defendants-Appellees*
1601 Cherry Street, Suite 1350
Philadelphia, Pennsylvania 19102
(267) 319-7802

CP COUNSEL PRESS   (800) 4-APPEAL • (334154)

# United States Court of Appeals for the Third Circuit

## Corporate Disclosure Statement and
## Statement of Financial Interest

No. 24-1793

CARL WILLIAMS

v.

LINODE LIMITED LIABILITY CO., et al.

Instructions

      Pursuant to Rule 26.1, Federal Rules of Appellate Procedure any nongovernmental corporate party to a proceeding before this Court must file a statement identifying all of its parent corporations and listing any publicly held company that owns 10% or more of the party's stock.

      Third Circuit LAR 26.1(b) requires that every party to an appeal must identify on the Corporate Disclosure Statement required by Rule 26.1, Federal Rules of Appellate Procedure, every publicly owned corporation not a party to the appeal, if any, that has a financial interest in the outcome of the litigation and the nature of that interest. This information need be provided only if a party has something to report under that section of the LAR.

      In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate shall provide a list identifying: 1) the debtor if not named in the caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is an active participant in the bankruptcy proceedings. If the debtor or the bankruptcy estate is not a party to the proceedings before this Court, the appellant must file this list. LAR 26.1(c).

      The purpose of collecting the information in the Corporate Disclosure and Financial Interest Statements is to provide the judges with information about any conflicts of interest which would prevent them from hearing the case.

      The completed Corporate Disclosure Statement and Statement of Financial Interest Form must, if required, must be filed upon the filing of a motion, response, petition or answer in this Court, or upon the filing of the party's principal brief, whichever occurs first. A copy of the statement must also be included in the party's principal brief before the table of contents regardless of whether the statement has previously been filed. Rule 26.1(b) and (c), Federal Rules of Appellate Procedure.

      If additional space is needed, please attach a new page.

(Page 1 of 2)

Pursuant to Rule 26.1 and Third Circuit LAR 26.1, <u>Linodian LLC d/b/a Linode LLC</u>
makes the following disclosure:                                    (Name of Party)

      1) For non-governmental corporate parties please list all parent corporations:

          None

      2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock:

          None

      3) If there is a publicly held corporation which is not a party to the proceeding before this Court but which has as a financial interest in the outcome of the proceeding, please identify all such parties and specify the nature of the financial interest or interests:

    Akamai Technologies, Inc., a publicly-held corporation, acquired Linode in March 2022.

      4) In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate must list: 1) the debtor, if not identified in the case caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is active participant in the bankruptcy proceeding. If the debtor or trustee is not participating in the appeal, this information must be provided by appellant.

<u>/s Stephanie J. Peet, Esq.</u>                    Dated: <u>5/15/2024</u>
(Signature of Counsel or Party)

**rev: 09/2014**                    (Page 2 of 2)

# United States Court of Appeals for the Third Circuit

## Corporate Disclosure Statement and Statement of Financial Interest

No. 24-1793

CARL WILLIAMS

v.

LINODE LIMITED LIABILITY CO., et al.

Instructions

Pursuant to Rule 26.1, Federal Rules of Appellate Procedure any nongovernmental corporate party to a proceeding before this Court must file a statement identifying all of its parent corporations and listing any publicly held company that owns 10% or more of the party's stock.

Third Circuit LAR 26.1(b) requires that every party to an appeal must identify on the Corporate Disclosure Statement required by Rule 26.1, Federal Rules of Appellate Procedure, every publicly owned corporation not a party to the appeal, if any, that has a financial interest in the outcome of the litigation and the nature of that interest. This information need be provided only if a party has something to report under that section of the LAR.

In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate shall provide a list identifying: 1) the debtor if not named in the caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is an active participant in the bankruptcy proceedings. If the debtor or the bankruptcy estate is not a party to the proceedings before this Court, the appellant must file this list. LAR 26.1(c).

The purpose of collecting the information in the Corporate Disclosure and Financial Interest Statements is to provide the judges with information about any conflicts of interest which would prevent them from hearing the case.

The completed Corporate Disclosure Statement and Statement of Financial Interest Form must, if required, must be filed upon the filing of a motion, response, petition or answer in this Court, or upon the filing of the party's principal brief, whichever occurs first. A copy of the statement must also be included in the party's principal brief before the table of contents regardless of whether the statement has previously been filed. Rule 26.1(b) and (c), Federal Rules of Appellate Procedure.

If additional space is needed, please attach a new page.

(Page 1 of 2)

Pursuant to Rule 26.1 and Third Circuit LAR 26.1,  <u>Linode Limited Liability Company</u>
makes the following disclosure:                                          (Name of Party)

       1) For non-governmental corporate parties please list all parent corporations:

         None

       2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock:

         None

       3) If there is a publicly held corporation which is not a party to the proceeding before this Court but which has as a financial interest in the outcome of the proceeding, please identify all such parties and specify the nature of the financial interest or interests:

     Akamai Technologies, Inc., a publicly-held corporation, acquired Linode in March 2022.

       4) In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate must list: 1) the debtor, if not identified in the case caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is active participant in the bankruptcy proceeding. If the debtor or trustee is not participating in the appeal, this information must be provided by appellant.

<u>/s Stephanie J. Peet, Esq.</u>                Dated: <u>5/15/2024</u>
(Signature of Counsel or Party)

**rev: 09/2014**             (Page 2 of 2)

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ iii

STATEMENT REQUESTING THAT ORAL ARGUMENT BE HELD ................ 1

COUNTER-STATEMENT OF JURISDICTION ...................................... 1

COUNTER-STATEMENT OF ISSUES ................................................... 2

STATEMENT OF RELATED CASES ..................................................... 2

COUNTER-STATEMENT OF THE CASE ............................................. 2

    I.    Introduction ........................................................................ 2

    II.    The Background of Appellant's Employment At Linode ............ 3

    III.    Appellant Was Terminated From His Employment Due To His Public Support Of, And Affiliation With, Twice-Convicted Felon And Child Sex Offender, John Musbach ............ 4

    IV.    Appellant Failed To Establish His Claims At Trial. ............ 6

PROCEDURAL HISTORY ..................................................................... 7

SUMMARY OF THE ARGUMENT ...................................................... 8

STANDARD OF REVIEW ..................................................................... 9

LEGAL ARGUMENT ............................................................................ 10

    I.    The District Court's Evidentiary Rulings Do Not Amount To Reversible Error ........................................................ 10

        A.    The District Court Properly Admitted, And Limited, Evidence Bearing On Appellant's Relationship With Mr. Musbach ........................................................ 11

        B.    No Evidence Was Introduced To Suggest That Appellant Engaged In Criminal Behavior ................ 14

        C.    The District Court Did Not Prevent Appellant From Cross-Examining Defense Witnesses "On Documents Withheld" ........................................................ 16

i

D.     Appellees' Testimony On The Reason For Appellant's Termination Was Neither "Fundamentally Unfair" Nor Was It Reversible Error ............................................................ 18

E.     The District Court Never "Refused" To Admit Linode's EEOC Position Statement And Did Not Abuse Its Discretion In Requiring Appellant To Lay The Proper Foundation For Its Admission ................................ 20

II.     The District Court Did Not Commit Reversible Error In Its Instructions To The Jury On Issues Pertaining To John Musbach ................................................................................................ 22

III.     The District Court Did Not Abuse Its Discretion In Denying Appellant's Motion To The Amend The Complaint ........................... 24

A.     Appellant's PHRA Claims Were Time-Barred And Therefore Amendment Would Have Been Futile ..................... 25

B.     Appellant Failed To Administratively Exhaust PFPO Claims And Therefore Amendment Would Have Been Futile ........................................................................................ 26

C.     Granting Leave to Amend the Complaint At The Eleventh Hour Would Have Prejudiced Appellees ................. 28

IV.     The Cumulative Error Doctrine Does Not Apply And, Even If It Did, Appellant Is Not Entitled To A New Trial .............................. 29

V.     The District Court Did Not Abuse Its Discretion In Denying Appellant's Motion to Disqualify Counsel ......................................... 30

A.     The District Court Did Not Abuse Its Discretion in Denying Appellant's Motion To Disqualify Defense Counsel ........................................................................................ 32

CONCLUSION ........................................................................................................ 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Ansell v. Green Acres Contracting Co., Inc.*,
  347 F.3d 515 (3d Cir. 2003) ...................................................................10

*Bakhtiari v. Spaulding*,
  779 F. App'x 129 (3d Cir. 2019) ..........................................................22

*Bhaya v. Westinghouse Elec. Corp.*,
  922 F.2d 184 (3d Cir. 1990) .................................................... 10, 11, 22

*Carlyle Towers Condo. Ass'n, Inc. v. Crossland Sav., FSB*,
  944 F. Supp. 341 (D.N.J. 1996) ............................................................32

*Connelly v. Steel Valley Sch. Dist.*,
  706 F.3d 209 (3d Cir. 2013) .................................................................24

*Donahue v. City of Hazleton*,
  No. 22-3029, 2023 U.S. App. LEXIS 29247 (3d Cir. Nov. 3, 2023) ...................19

*Dworkin v. General Motors Corp.*,
  906 F. Supp. 273 (E.D. Pa. 1995) .........................................................33

*Edwards v. City of Phila.*,
  860 F.2d 568 (3d Cir. 1988) .................................................................16

*Everage v. Nat'l Recovery Agency*,
  No. 14-2463, 2015 WL 1071757 (E.D. Pa. Mar. 11, 2015) ...............................28

*Fetterman v. Cochran*,
  No. 1300 WDA 2021, 2022 Pa. Super. Unpub. LEXIS 2716, 2022 WL
  16956537 (Pa. Super. Ct. Nov. 16, 2022)................................................34

*Foster v. Nat'l Fuel Gas Co.*,
  316 F.3d 424 (3d Cir. 2003) .................................................................19

*Gagliardo v. Connaught Labs.*,
  311 F.3d 565 (3d Cir. 2002) ...................................................................9

*Glass v. Philadelphia Electric Co.*,
  34 F.3d 188 (3d Cir. 1994) ...................................................................10

*Commonwealth Insurance Co. v. Graphix Hot Line, Inc.*,
  808 F. Supp. 1200 (E.D. Pa. 1992).........................................................32

*Gregor v. Pickering Manor Home,*
  No. 07-2268, 2008 WL 2265271 (E.D. Pa. June 3, 2008) .................................28

*Griffiths v. Cigna Corp.,*
  857 F. Supp. 399 (E.D. Pa. 1994) ..........................................................................23

*Holst v. Oxman,*
  290 F. App'x. 508 (3d Cir. 2008) ...........................................................................26

*In re Burlington Coat Factory Sec. Litig.,*
  114 F.3d 1410 (3d Cir. 1997) .................................................................................24

*Inter Med. Supplies, Ltd. v. EBI Med. Sys.,*
  181 F.3d 446 (3d Cir. 1999) ...................................................................................23

*Johnson v. Pub. Servs. Enter. Grp.,*
  529 F. App'x 188 (3d Cir. 2013) ............................................................................18

*Koslosky v. Am. Airlines, Inc.,*
  456 F. Supp. 3d 681 (E.D. Pa. 2020)......................................................................26

*Laborers Local 1298 Annuity Fund v. Grass*
  *(In re Rite Aid Corp Sec. Litig.),*
  139 F. Supp. 2d 649 (E.D. Pa. 2001) ......................................................................34

*Lazy Oil Co. v. Witco Corp.,*
  166 F.3d 581 (3d Cir. 1999) .....................................................................................9

*Lee v. Bay, LLC,*
  2023 WL 1971209 (E.D. Pa. Feb. 13, 2023) ..........................................................27

*Lockhart v. Westinghouse Credit Corporation,*
  879 F.2d 43 (3d Cir. 1989) ......................................................................................29

*Olefins Trading, Inc. v. Han Yang Chem. Corp.,*
  9 F.3d 282 (3d Cir. 1993) .........................................................................................9

*Omogbehin v. Cino,*
  485 F. App'x 606 (3d Cir. 2012).............................................................................29

*Patterson v. United States,*
  597 F. App'x 671 (3d Cir. 2015) ............................................................................29

*Peterkin v. Prospect Airport Servs. Inc.,*
  2021 WL 2400753 (E.D. Pa. June 11, 2021)..........................................................27

iv

*Phila. Workforce Dev. Corp. v. KRA Corp.*,
  673 F. App'x 183 (3d Cir. 2016) ...........................................20

*Premier Comp Sols., LLC v. UPMC*,
  970 F.3d 316 (3d Cir. 2020) ...............................................24

*Richardson v. Frank*, No. 88-7325,
  1989 WL 135379 (E.D. Pa. Nov. 8, 1989) ...................... 28-29

*Rudalavage v. PPL Elec. Utils. Corp.*,
  268 A.3d 470 (Pa. Super. Ct. 2022)......................................33

*SEC v. Infinity Group Co.*,
  212 F.3d 180 (3d Cir. 2000) ...............................................29

*Shade v. Great Lakes Dredge & Dock Co.*,
  72 F. Supp. 2d 518 (E.D. Pa. 1999) .....................................32

*Smith v. RB Distribution, Inc.*,
  498 F. Supp. 3d 645 (E.D. Pa. 2020).....................................27

*U.S. ex rel. Schumann v. Astrazeneca Pharms. L.P.*,
  769 F.3d 837 (3d Cir. 2014) ......................................... 10, 24

*United States v. Furst*,
  886 F.2d 558 (3d Cir. 1989) ...............................................20

*United States v. Miller*,
  624 F.2d 1198 (3d Cir. 1980) ......................................... 9, 30

*Vandenbraak v. Alfieri*,
  209 F. App'x 185 (3d Cir. 2006) .........................................16

*William A. Graham Co. v. Haughey*,
  646 F.3d 138 (3d Cir. 2011) ...............................................19

*Yan v. Penn State Univ.*,
  529 F. App'x 167 (3d Cir. 2013) .........................................18

## Statutes & Other Authorities:

28 U.S.C. § 1291 ....................................................................1

28 U.S.C. § 1331 ....................................................................1

Fed. R. Civ. P. 51 .................................................................23

Fed. R. Civ. P. 56(d) .............................................................18

Fed. R. Civ. P. 59 ................................................................19

Fed. R. Civ. P. 61 ........................................................... 10, 11

Fed. R. Evid. 403 ..................................................... 2, 8, 11, 12

Fed. R. Evid. 602 ................................................................21

Fed. R. Evid. 801(c)(2) .........................................................13

43 Pa. S.A. § 959(h) ............................................................26

Pa. R.P.C. 1.0(k) .................................................................34

Pa. R.P.C. 1.10(b) ....................................................... 31, 33, 34

Phila. Code § 9-1112(1) ..................................................... 26-27

Phila. Code § 9-1112(4) ........................................................27

Phila. Code § 9-1122(1) ........................................................27

## STATEMENT REQUESTING THAT ORAL ARGUMENT BE HELD

Appellees respectfully request that oral argument be held and represent that oral argument is warranted.  Oral argument will assist this Court in reaching a full understanding of the issues presented and the underlying facts. Moreover, oral argument will allow the attorneys for both sides to address any outstanding legal or factual issues that the Court deems relevant.

## COUNTER-STATEMENT OF JURISDICTION

The District Court exercised subject matter jurisdiction pursuant to 28 U.S.C. § 1331.  This Court has jurisdiction pursuant to 28 U.S.C. § 1291.  Following a jury trial, the District Court entered judgment for Appellees on February 1, 2024.  *Carl Williams v. Linode Limited Liability Company et al*, 2:22-cv-01618-JDW, Docket Entry ("DE") 80 (E.D. Pa. Feb. 1, 2024).  (A0017).[1] Appellant filed a Motion for a New Trial on February 12, 2024.  DE 81. (A0018-44).  The District Court issued an Order denying Appellant's Motion for a New Trial on March 29, 2024.  DE 92. (A0105).  Appellant filed his Notice of Appeal on April 26, 2024. (A0009).

---

[1] Citations to "A___" refer to pages in Appellant's Appendix.  Citations to "AB ___" refer to Appellant's opening brief.

## COUNTER-STATEMENT OF ISSUES

1.      Whether the District Court abused its discretion in resolving certain evidentiary issues raised by Appellant at trial pursuant to Federal Rule of Evidence 403?

2.      Whether the District Court committed reversible error in its instructions to the jury?

3.      Whether the District Court abused its discretion in denying Appellant's Motion to Amend the Complaint filed on the eve of trial?

4.      Whether the District Court abused its discretion in denying Appellant's Motion to Disqualify Defense Counsel?

## STATEMENT OF RELATED CASES

There are no related cases or proceedings.

## COUNTER-STATEMENT OF THE CASE

### I.      Introduction

After a week-long trial, a jury of Appellant's peers determined that Linode's decision to terminate Appellant's employment had nothing to do with his age, sex, sexual orientation, or any other protected characteristic, nor any alleged protected activity. (*See* Verdict Sheet, A0011-16). The record evidence, including Appellant's

own testimony, made clear that Appellant had no legal or factual basis for his claims against Appellees.

The facts at trial were straightforward. Linode terminated Appellant's employment after Appellant testified in a criminal court hearing in support of a convicted felon, with whom Appellant was (and continued to be) in an interpersonal relationship. (*See, e.g.*, A2456, 1/30/24 Tr. 84:5-21, 175:18-176:1). Appellant's supervisors considered his behavior to be abhorrent and determined they could no longer work with him. (A2456, 1/30/24 Tr. 84:5-21, 175:18-176:1). Accordingly, Linode terminated Appellant's employment. (A2456, 1/30/24 Tr. 84:5-21, 175:18-177:12).

## II.   The Background of Appellant's Employment At Linode

Appellant began his employment as Network Engineer for Linode in November of 2014. (A1817, 1/26/24 Tr. 76:4-6). Appellant was fifty years of age at the time he was hired. (A1338, 1/24/24 Tr. 18:3-8).  Prior to accepting Linode's employment offer, Appellant communicated with its Director of Human Resources, Vincent Palochko, about the day-to-day responsibilities and expectations of the Network Engineer role, which came with an annual salary of $120,000 placing him in the top 5% of wage earners at Linode.  (A1345, 1/24/24 Tr. 25:7-26:11). Appellant initially worked from Linode's Galloway, New Jersey office and first reported to Mr. Tom Asaro, Linode's Chief Operations Officer. (A1344, 1/24/24 Tr. 24:5-20;

3

A1351, 1/24/24 Tr. 31:22-25). On January 28, 2019, Linode promoted Appellant to

Director of Network Strategy and Innovation. (A1457, 1/24/24 Tr. 137:23-138:3;

A1476, 1/24/24 Tr. 157:19-20).  Appellant was fifty-four years of age at the time of

his promotion. (*See* A1338, 1/24/24 Tr. 18:3-8).  In this role, Appellant reported

directly to Mr. Dan Spataro. (A1795, 1/26/24 Tr. 61:10-20). Despite Appellant's

testimony otherwise, which is uncorroborated by any evidence other than his own

self-serving testimony, he did not complain of discrimination, or any other unlawful

conduct, at any time during his career at Linode. (A2059, 1/29/24 Tr. 34:11-24;

A2448, 1/30/24 Tr. 137:5-25).

### III.   <u>Appellant Was Terminated From His Employment Due To His Public Support Of, And Affiliation With, Twice-Convicted Felon And Child Sex Offender, John Musbach.</u>

On August 14, 2020, it came to Mr. Spataro's attention that Appellant took

time off from work on August 13, 2020, without approval, to testify in a criminal

proceeding involving a former employee of Linode, Mr. John Musbach. (A2454,

1/30/24 Tr. 143:15-146:23). Mr. Spataro testified that another Linode employee sent

him a Slack message with a link to an article regarding Mr. Musbach's arrest and

which included a quote from Appellant.  (A2454, 1/30/24 Tr. 143:15-146:23). The

article was published in the Philadelphia Inquirer and specifically stated that

Appellant testified in Musbach's criminal case that Musbach "had been open about

his past problems with child porn[.]" (A2454, 1/30/24 Tr. 143:15-146:23; A3203-3205, Trial Exhibit 24).

The evidence elicited at trial showed that Mr. Musbach and Appellant began a relationship in or around August 2016 and that their relationship continued into August 2020. (A1810, 1/26/24 Tr. 76:1-87:15). As Appellant testified, he and Mr. Musbach remained in a relationship as of the trial date (even though Mr. Musbach was in prison). (A1841, 1/26/24 Tr. 107:2-109:4). In August 2020, Mr. Musbach was arrested and charged with federal crimes for the attempted murder of a minor child. (A1810, 1/26/24 Tr. 76:1-87:15). Mr. Musbach had previously exchanged pornographic photographs with that same child, for which he was charged with, and convicted of, "endangering the welfare of a child by sexual contact." (A1841, 1/26/24 Tr. 107:2-109:4). Mr. Musbach pled guilty to the attempted murder charge in February 2023 and, in June 2023, he was sentenced to 6.5 years in prison. (A1810, 1/26/24 Tr. 76:1-87:15, 107:2-109:4).

Mr. Spataro testified that he was appalled by Appellant's affiliation with, and apparent defense of, Mr. Musbach. (A2451, 1/30/24 Tr. 140:8-150:20). He and Mr. Palochko commenced an investigation into the events of August 13, 2020 and confirmed that Appellant did, in fact, attend a court proceeding for Mr. Musbach during the workday. (A2451, 1/30/24 Tr. 140:8-150:20). Taking time off work to testify in a judicial proceeding without notifying Linode or getting consent to miss

5

time for work aside, the gravamen of Appellant's termination was simple: Appellees found Appellant's defense of, and protracted relationship with, Mr. Musbach to be against Appellees' corporate and personal morals.  Mr. Spataro testified that, upon learning of Appellant's involvement at the August 2020 criminal hearing, he went to Mr. Palochko and Mr. Asaro and told them he refused to work with Appellant any further. (A2451, 1/30/24 Tr. 140:8-150:20). Linode thereafter made the decision to terminate Appellant's employment effective August 19, 2020. (A2451, 1/30/24 Tr. 140:8-150:20).

## IV.   <u>Appellant Failed To Establish His Claims At Trial.</u>

Over the course of four days on the witness stand, Appellant painstakingly told his story to a jury of seven men and women in excruciating detail. (*See generally* A1192-1864). The jury listened attentively and ultimately decided that Linode did not discriminate or retaliate against Appellant because Appellant failed to meet the standards required to prove his claims. Appellant then filed a motion for a new trial, which the District Court properly denied. (A0087-105).

Appellant blames everyone but himself for his loss at trial: the District Court erred; defense counsel erred; the jury erred. Appellant refuses to accept that a document did not get admitted into evidence because his counsel lacked an understanding of the difference between hearsay and foundation; that he did not receive a limiting instruction on a charge since he did not request one or otherwise

raise an objection at the charge conference; that he failed to raise an alleged discovery dispute during the discovery period in this case; or, that he did not call a single witness at trial to corroborate his claims. Appellant lost because he did not prove the elements of his claims and the jury did not find evidence of discrimination or retaliation.

## PROCEDURAL HISTORY

Appellant filed his Complaint on April 26, 2022. DE1. (A2852-2872). On April 13, 2023, Appellant filed a motion to disqualify defense counsel. (A0106-118). The District Court held hearings on Appellant's motion to disqualify on April 21, 2023 and April 26, 2023. DE30, DE33. (A0218-387). The District Court entered an order denying Appellant's motion to disqualify on April 27, 2023. DE32. (A0388). Appellant thereafter filed a motion to amend the complaint on January 13, 2024. DE65. (A0890-998). The District Court entered an order denying Appellant's motion to amend on January 23, 2024. DE70. (*See* A0006).

Trial commenced on January 23, 2024. (*See* A1192 *et seq.*). The jury rendered a verdict in Appellees' favor and the District Court entered judgment for Appellees on February 1, 2024. DE80 (E.D. Pa. Feb. 1, 2024). (A0011-16). Appellant filed a Motion for a New Trial on February 12, 2024. DE 81. (A0018-44). The District Court entered an order denying Appellant's Motion for a New Trial on March 29,

2024.  DE 92. (A0105).  Appellant filed his Notice of Appeal on April 26, 2024.

(A0009).

## SUMMARY OF THE ARGUMENT

Appellant presents this Court with no basis upon which to disturb the jury's

verdict or to otherwise order a new trial. The issues Appellant raises on appeal are

all resolved by answering a central question: whether the District Court abused its

discretion in its various rulings, including the denials of Appellant's motion to

disqualify defense counsel and Appellant's motion to amend the Complaint on the

eve of trial, evidentiary issues at trial, and the instructions upon which the jury was

charged.  The District Court did not err in any of the ways Appellant contends and

it did not abuse its discretion. To the contrary, the District Court was eminently fair,

rational, and even-handed in its rulings, particularly those dealing with the important

evidentiary issues relating to Appellant's affiliation with John Musbach.

First, Appellant argues that the District Court generally misapplied Federal

Rule of Evidence 403 in allowing a central piece of evidence—information

pertaining to Appellant's affiliation with John Musbach. Next, Appellant argues that

other evidentiary issues somehow rise to the level of reversible error, including: (1)

the District Court did not allow Appellant to introduce Linode's Position Statement

to the United States Equal Employment Opportunity Commission ("EEOC") as an

exhibit, (2)  did not permit Appellant to testify about documents allegedly withheld

during discovery, (3) did not allow an "adverse inference argument," and (4) permitted defense counsel to make improper comments about Appellant's relationship with Mr. Musbach during opening and closing statements. Relatedly, Appellant argues that the District Court's jury instructions failed to include a proper limiting instruction with regard to Mr. Musbach.

Next, Appellant argues that the District Court improperly denied his motion to amend the Complaint, which was filed *after* the final pretrial conference. Appellant also argues that defense counsel should have been disqualified from handling the case after one of Appellant's attorneys joined the same firm employing defense counsel. Last, Appellant argues that the cumulative error doctrine requires the jury's verdict be reversed.

Appellant's arguments are meritless. As discussed below, the District Court did not abuse its discretion or otherwise commit reversible error with respect to the issues on appeal. Accordingly, the District Court's orders below should be affirmed.

## **STANDARD OF REVIEW**

The decisions of the District Court at issue in this appeal are reviewed for abuse of discretion. *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980) (denial of Appellant's motion to disqualify defense counsel is reviewed for abuse of discretion); *Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581, 588 (3d Cir. 1999) (same); *Gagliardo v. Connaught Labs.*, 311 F.3d 565, 572 (3d Cir. 2002) (*citing Olefins*

9

*Trading, Inc. v. Han Yang Chem. Corp.*, 9 F.3d 282, 289 (3d Cir. 1993)) (denial of motion for a new trial is reviewed for abuse of discretion); *Bhaya v. Westinghouse Elec. Corp.*, 922 F.2d 184, 191 (3d Cir. 1990) ("Unless a trial judge misstates the law, the judge's rulings on points for charge may be reversed only if the judge committed an abuse of discretion."); *U.S. ex rel. Schumann v. Astrazeneca Pharms. L.P.*, 769 F.3d 837, 849 (3d Cir. 2014) (denial of a motion for leave to amend is reviewed for abuse of discretion); *Glass v. Philadelphia Electric Co.*, 34 F.3d 188, 191 (3d Cir. 1994) (a district court's rulings regarding the admission of evidence are reviewed for an abuse of discretion).

When applying the abuse of discretion standard, the Third Circuit "will not disturb a trial court's exercise of discretion unless no reasonable person would adopt the district court's view." *Ansell v. Green Acres Contracting Co., Inc.*, 347 F.3d 515, 519 (3d Cir. 2003) (citation omitted).

## LEGAL ARGUMENT

### I.   The District Court's Evidentiary Rulings Do Not Amount To Reversible Error.

Appellant argues throughout his brief that a number of the District Court's evidentiary rulings amount to reversible error. Those rulings are reviewed for an abuse of discretion. *See Glass v. Philadelphia Electric Co.*, 34 F.3d 188, 191 (3d Cir. 1994). Pursuant to Federal Rule of Civil Procedure 61, "[u]nless justice requires

otherwise, **no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new trial**, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, **the court must disregard all errors and defects that do not affect any party's substantial rights.**" Fed. R. Civ. P. 61 (emphasis added). Stated differently, "a trial judge's decision to admit or exclude evidence under [Rule 403] may not be reversed unless it is arbitrary and irrational." *Bhaya v. Westinghouse Elec. Corp.*, 922 F.2d 184, 187 (3d Cir. 1990). The District Court properly exercised its discretion in its evidentiary rulings and at no time was arbitrary or irrational, and none of the purported errors unfairly prejudiced Appellant's substantial rights. (*See generally* A0094-0104; A0954, 1/12/2024 Tr. 59:20-79:11).

### A. The District Court Properly Admitted, And Limited, Evidence Bearing On Appellant's Relationship With Mr. Musbach.

First, Appellant argues the Court improperly admitted the newspaper article which led directly to Appellant's termination from employment (Trial Exhibit 24), that the jury was told that Mr. Musbach pled guilty to the criminal charges against him, that Linode was permitted to introduce evidence of Mr. Musbach's crimes, and generally, that the District Court failed to conduct a "proper" analysis under Federal Rule of Evidence 403. (Ab17-23). However, the record makes it clear that the District Court conducted a balancing analysis—numerous times—that

overwhelmingly comports with the requirements of Rule 403. (*See generally* A0094-0104; A0954, 1/12/2024 Tr. 59:20-79:11).

Appellant argues, inconsistently, that the District Court "did not consider 'unfair prejudice' or weigh issues like pornography, pedophilia, and attempted murder of a child," and then cites directly to the Rule 403 analysis conducted by the Court. (*See* Ab18). Appellant similarly argues that Exhibit 26 (Mr. Musbach's plea agreement) was "supposed to be excluded" from evidence at trial, and then cites the District Court doing just that—excluding Exhibit 26 from evidence. (*See* Ab20). Notably, even before trial, the Court excluded exhibits 14, 26, 27, 43, 61, 62, 68, and 80 at Appellant's request. (*See* A0954, 1/12/2024 Tr. 59:20-79:11).

As to the newspaper article, the Court balanced the article's probative value against any likely prejudice at the final pretrial conference. (*See generally* A0094-0104; A0954, 1/12/2024 Tr. 59:20-79:11). The Court did so again at trial. (*See* A1740, 1/26/2024 Tr. 6:6-10 (declining to exclude the article because it "clearly is something that is the subject of the company's argument as to why it terminated Mr. Williams.")). Critically, Appellant does not, and cannot, dispute that the article was central to the reason for Appellant's termination and any alleged prejudice to Appellant was outweighed by its probative value. Instead, Appellant argues the article "was hearsay, double and triple hearsay." (Ab21-22). There is no record evidence that the article was introduced for its truth. Instead, the article was admitted

for its motivating effects on Mr. Spataro, Mr. Palachko, and Mr. Asaro. (*See* A1882, 1/26/2024 Tr. 148:7-159:24; A2184, 1/29/24 Tr. 159:3-170:6; A2458, 1/30/2024 Tr. 147:15-148:21). Accordingly, the article was *not* inadmissible hearsay under Federal Rule of Evidence 801(c)(2).

The Court similarly engaged in an appropriate analysis when it allowed Linode to introduce certain evidence relating to Appellant's relationship with Mr. Musbach. In ruling on Appellant's motion in limine, the Court explained that "the jury can only understand and weigh" Linode's legitimate, nondiscriminatory reason for terminating Appellant (his affiliation with Mr. Musbach) "if it knows about Mr. Musbach." (A0893-894, ECF No. 61 at 3-4). The Court also indicated that it would admit evidence about Mr. Musbach only to the extent it "impacted [the defense witnesses'] thinking at the time of the termination decision or to the extent that it impacts Mr. Williams's emotional distress claim." *Id.* And that is precisely how the Court handled this evidence at trial. For example, the Court instructed the jury to focus their deliberations on what Linode knew at the time of Appellant's termination. (A2569, 1/30/2024 Tr. 258:24-259:5). The Court also directed Mr. Palachko—in the presence of the jury—to limit his testimony to what he "knew about at the time [Linode] terminated [Appellant]," noting that if he had "learned stuff since then about [Mr. Musbach's case] or anything else, that's not what [he] should be talking about." (A2110, 1/29/2024 Tr. 85:12-20).

13

The Court similarly ruled that Linode was entitled to explore Mr. Musbach's criminal case as a potential alternate cause of Appellant's alleged emotional distress. (A0893-894). Appellant's counsel did not object to the questions Appellant was asked about the emotional impact of Mr. Musbach's criminal affairs and even asked such questions of Appellant himself. (A1840, 1/26/2024 Tr. 106:23-108:21, 121:1-122:7). Tellingly, no witnesses aside from Appellant were asked about the outcome of Mr. Musbach's criminal case—making it clear that the evidence was introduced solely for its impact on Appellant's emotional distress claim.

While Appellant objects to the contents of Linode's opening statement that referenced his relationship with Mr. Musbach, Appellant ignores the fact that he was asked more than a dozen questions about the emotional impact of Mr. Musbach's guilty plea, prison sentence, and term of incarceration. **Appellant's counsel did not object once during that line of questioning.** (A1840, 1/26/24 Tr. 106:23-108:21). Accordingly, the District Court did not abuse its discretion in admitting, and limiting, evidence pertaining to Appellant's relationship with Mr. Musbach.

### B. No Evidence Was Introduced To Suggest That Appellant Engaged In Criminal Behavior.

Appellant repeatedly argues that Linode suggested to the jury that Appellant was complicit in Mr. Musbach's crimes or was, himself, a criminal. In reality, Linode made it clear—through its questioning of Appellant—that Appellant was not

accused of any crime and was not involved in Mr. Musbach's crimes.  (A1812, 1/26/24 Tr. 78:11-13; A1821, 1/26/24 Tr. 87:10-15). With respect to the timeline surrounding Appellant's involvement with Mr. Musbach, defense counsel asked Appellant: "And to be very clear and very fair to you, this conduct that was underlying these charges happened before you formed a relationship with Mr. Musbach, right?" to which Appellant responded affirmatively. (A1821, 1/26/24 Tr. 87:10-15). Similarly, when asking Appellant about Mr. Musbach's 2016 arrest, defense counsel prefaced his question with **"I understand you weren't involved in any of it,** but you certainly knew that [Mr. Musbach] got into some trouble in 2016, right?" (A1812, 1/26/24 Tr. 78:11-13).

Appellant argues that a number of statements made during Appellees' opening and closing statements were improper because, according to Appellant, they presented an unfair picture of the relationship between him and Mr. Musbach. (Ab17-18). Appellant suggests that because not every statement or argument by Appellees' counsel in his opening and closing statements was not supported by evidence at trial, that counsel's statements must have therefore been false. This is not the case and there is no record evidence suggesting otherwise. The Court repeatedly instructed the jury that "statements" and "arguments" of the lawyers for the parties "are not evidence." (A2564, 1/30/2024 Tr. 253:2-7). This type of limiting instruction negates any potential prejudice suffered from improper remarks during

15

openings and closings. *See Edwards v. City of Phila.*, 860 F.2d 568, 575 (3d Cir. 1988); *Vandenbraak v. Alfieri*, 209 F. App'x 185, 190 (3d Cir. 2006). Accordingly, Appellant's argument that, in its opening and closing statements, Linode unfairly attributed Mr. Musbach's criminal conduct to him is not borne out by the record and falls woefully short of establishing an abuse of discretion or reversible error by the Court.

### C. The District Court Did Not Prevent Appellant From Cross-Examining Defense Witnesses "On Documents Withheld."

Appellant further argues that he was "not permitted to set up an adverse inference instruction" because the Court did not allow Appellant's counsel to accuse Appellees of spoliation. (Ab24). Appellant sought to elicit testimony that Slack threads existed but were wrongfully withheld by Linode. (*See, e.g.*, A1579, 1/25/2024 Tr. 22:19-24:1; 1/29/2024 Tr. 11:15-12:17). The District Court instructed Appellant's counsel to avoid representing to the jury "what happened in discovery." (A2035, 1/29/2024 Tr. 10:15-13:11). However, the District Court expressly permitted Appellant's counsel to question defense witnesses about documents they recalled seeing and, if appropriate, point out to the jury that those documents are not in evidence even though the witnesses testified they exist. (A2035, 1/29/2024 Tr. 10:15-13:18). In response, Appellant's counsel agreed, expressly stating: "I think I

can do it without making those representations about discovery. I think I can do it with just focusing on the evidence." (A2038, 1/29/2024 Tr. 13:9-11).

Appellant argues that Appellees "were permitted to argue adverse inference" against him by simply noting for the jury that not a single document in the case supported his contention that he was subjected to constant age and sexual orientation discrimination throughout his six years of employment at Linode. (Ab25). There is nothing untrue about Linode's statement in this regard—there is not a single document in the trial record of this case that directly supports Appellant's allegations of discrimination. Any statements by Linode in this regard were confined to the evidence introduced in the case and what that evidence did or did not show.

Moreover, Appellant's argument is nothing more than an attempt to relitigate a discovery issue that should have been brought to the Court prior to trial. The fact that Appellant or his counsel failed to properly follow up on discovery simply had no relevance at trial. (*See* A1989, 1/26/2024 Tr. 254:20-255:13 (noting generally that Appellant had an obligation to "follow up" on any ongoing discovery issues prior to trial); A2039, 1/29/2024 Tr. 14:6-21 (to Appellant's counsel, noting in reference to Linode's alleged discovery deficiencies that "at some point you've got to decide that you can't wait any longer. . . . And there was plenty of time post discovery, before this trial," where Appellant could have sought relief from the Court); A2636, 1/31/2024 Tr. 11:7-17:10). The District Court's refusal to allow

17

Appellant to baselessly accuse Appellees of spoliation at trial is not reversible error. *Johnson v. Pub. Servs. Enter. Grp.*, 529 F. App'x 188, 190 (3d Cir. 2013) (Plaintiff did not timely raise any issues regarding discovery, and was denied by order a request to reopen discovery after the deadline. He did not file a motion for reconsideration or appeal of the order and thus waived the issue on appeal); *Yan v. Penn State Univ.*, 529 F. App'x 167, 170 (3d Cir. 2013) ("Having failed to alert the District Court of the need for additional discovery pursuant to Fed. R. Civ. P. 56(d), Yan has waived the issue on appeal.")

Simply put, the Court did not permit, nor did Linode create, an "adverse inference" against Appellant. Linode instead accurately and appropriately pointed out that none of the documents admitted into evidence in the case supported Appellant's discrimination claims. In contrast, the District Court declined to allow Appellant to relitigate a stale discovery issue at trial. Declining to allow this was not an abuse of discretion and does not amount to reversible error.

### D. Appellees' Testimony On The Reason For Appellant's Termination Was Neither "Fundamentally Unfair" Nor Was It Reversible Error.

Without citing to a single case for authoritative support, Appellant argues that Appellees' explanation as to the reason for Appellant's termination from employment was "fundamentally unfair." (Ab26-27). Appellant does not articulate how or why the complained of conduct amounts to reversible error. Appellant's

18

argument boils down to this: he believes Appellees lied during trial and, therefore, the jury's verdict is somehow invalid. There is no evidence that Appellees (or their counsel) lied during trial. To the contrary, the defense witnesses candidly explained their reasons for initially telling Appellant that he was being terminated due to policy violations—because of their apprehension over Appellant's relationship with Mr. Musbach. (*See* A2451, 1/30/24 Tr. 140:8-150:20). Appellant's counsel was permitted to, and did, cross-examine each defense witness and attempt to impeach them with their prior inconsistent statements about the reason for Appellant's termination. (*See, e.g.*, A2081, 1/29/24 Tr. 56:10-58:8). The jury attentively considered this testimony and assigned it whatever weight it deemed appropriate.

Appellant is not entitled to relief based solely on his belief that Appellees lied during trial. It is axiomatic that a court must not substitute its judgment regarding witness credibility for that of the jury, especially on appeal. *See William A. Graham Co. v. Haughey*, 646 F.3d 138, 143 (3d Cir. 2011); *Donahue v. City of Hazleton*, No. 22-3029, 2023 U.S. App. LEXIS 29247, at *5 (3d Cir. Nov. 3, 2023) (determining that appellant was "not entitled to relief" based on his claim "on appeal that defendants lied during trial"). Indeed, under Federal Rule of Civil Procedure 59, "a district court's power to grant a new trial is limited to ensure that it does not substitute its judgment of the facts and the credibility of the witnesses for that of the jury." *Foster v. Nat'l Fuel Gas Co.*, 316 F.3d 424, 429 (3d Cir. 2003). And yet that

is exactly what Appellant asks this Court to do—to substitute its own credibility determinations for those of the jury.

### E. The District Court Never "Refused" To Admit Linode's EEOC Position Statement And Did Not Abuse Its Discretion In Requiring Appellant To Lay The Proper Foundation For Its Admission.

Appellant's argument that he was not permitted to introduce Linode's EEOC Position Statement into evidence is easily disposed of because the District Court never ruled that the Position Statement was inadmissible. (Ab27-28). To the contrary, during a sidebar conference, the Court agreed with Appellant's counsel that the Position Statement is not hearsay and is a party admission, but made clear to Appellant's counsel that the Position Statement would be admissible only "with a witness who has a foundation to sponsor it." (A1967, 1/26/24 Tr. 233:10-13). The District Court's decisions in this regard, which pertain to the admission of evidence, are reviewed for abuse of discretion. *Phila. Workforce Dev. Corp. v. KRA Corp.*, 673 F. App'x 183, 189 (3d Cir. 2016) (citing *United States v. Furst*, 886 F.2d 558, 571 (3d Cir. 1989)).

During the trial, in his motion for a new trial, and again now, Appellant fails to recognize the difference between foundation and hearsay. Mr. Palochko testified he was not familiar with the Position Statement and, therefore, the Court instructed Appellant's counsel that he could not show the witness the document because he had "no foundation to do so." (A1966, 1/26/24 Tr. 232:2-18). A sidebar was held to

address the issue, during which Appellant's counsel repeatedly claimed that the Position Statement was admissible because it "is not hearsay." (*Id.* at 232:15-16). The District Court explained to counsel that the document might not be barred by the hearsay rule, but it was a lack of foundation that was impeding its admission. (*Id.* at 232:17-19). Appellant's counsel then claimed that the document could be "used to impeach" but, again, the District Court corrected counsel and explained that "[e]very document that comes in needs to have foundation." (*Id.* at 232:15-234:19). Given Mr. Palochko's testimony that he was not familiar with the Position Statement, the Court properly exercised its discretion by determining that Appellant failed to lay the proper foundation under Federal Rule of Evidence 602 for admitting the Position Statement into evidence. Moreover, as the District Court stated in its opinion denying Appellant's Motion for a New Trial, not having the Position Statement in evidence did not prejudice Appellant:

> During trial, though, Linode's witnesses (including Mr. Spataro and Mr. Palochko) all acknowledged that they lied to Mr. Williams about their reasons for his termination him when they met with him to deliver the news. And they also acknowledged that they continued to lie about their reasons for terminating Mr. Williams during discovery in this case, including in sworn interrogatory responses. Temporally, the position statement came between the termination and the interrogatory responses. Had I admitted it into evidence, it would have been cumulative of the other evidence before the jury. Its exclusion did not prejudice Mr. Williams.

> (*See* A2825-2826).

21

Moreover, Appellant's counsel pointed out at trial that the Position Statement included "the same information" that *was* admitted at trial in other exhibits. (A1966, 1/26/24 Tr. 232:2-8). Accordingly, the Position Statement would have been cumulative of other evidence and the District Court's exclusion thereof was harmless.

## II.    The District Court Did Not Commit Reversible Error In Its Instructions To The Jury On Issues Pertaining To John Musbach.

The District Court's decisions regarding jury instructions are reviewed for abuse of discretion. *See Bhaya v. Westinghouse Elec. Corp.*, 922 F.2d 184, 191 (3d Cir. 1990) ("Unless a trial judge misstates the law, the judge's rulings on points for charge may be reversed only if the judge committed an abuse of discretion."); *Bakhtiari v. Spaulding*, 779 F. App'x 129, 132 (3d Cir. 2019).

Appellant makes the baseless contention that his requests for jury instructions or a "curative measure" were denied. (Ab23-24). The Court held a fulsome jury charge conference on January 29, 2024, the fifth day of trial. Not once during that conference did Appellant request any sort of general limiting instruction or request any specific instruction relating to Trial Exhibit 24, the Musbach article. (*See generally* A2253, 1/29/2024 Tr. 228:2-246:7). It is well-established that when a party fails to object on the record to a jury verdict sheet or to a jury charge that a party believes is in error before the jury is discharged, the objections are waived. *See*

*Inter Med. Supplies, Ltd. v. EBI Med. Sys.*, 181 F.3d 446, 463 (3d Cir. 1999). Federal Rule of Civil Procedure 51 specifically provides that "[n]o party may assign as error the giving or failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection . . . ." Fed. R. Civ. P. 51. **Appellant never requested "a jury instruction or clarification" during the charge conference at trial.** (*See generally* A2253, 1/29/2024 Tr. 228:2-246:7). Accordingly, Appellant has waived his right to raise any challenge to the jury instructions. *See Inter Med. Supplies, Ltd. v. EBI Med. Sys.*, 181 F.3d 446, 463 (3d Cir. 1999); Fed. R. Civ. P. 51.

Even if Appellant had not waived his challenge to the jury instructions (which he did), the decision to not include a limiting instruction specific to Exhibit 24 was well within the Court's sound discretion and certainly did not interfere with Appellant's "substantial rights." *See Griffiths v. Cigna Corp.*, 857 F. Supp. 399, 410 (E.D. Pa. 1994). Appellant similarly argues the District Court improperly allowed the jury to consider evidence relating to his relationship with Mr. Musbach. (Pl.'s Mot. at 8-12). However, the Court's instruction to the jury was clear that the jurors were to focus their deliberations on what Linode knew at the time of Appellant's termination:

> When evaluating Linode's non-discriminatory reason, you must only consider what Linode knew about Mr. Musbach's criminal case at the time Linode acted. For

> example, when Linode terminated Mr. Williams, it didn't
> have knowledge of subsequent developments in Mr.
> Musbach's criminal case. So those developments are
> irrelevant to your assessment of Linode's stated reason.

(A2569, 1/30/2024 Tr. 258:24-259:5).

In other words, the Court took great care to shield the jury from potentially

prejudicial testimony. Accordingly, the District Court's jury instructions do not

amount to reversible error.

### III. The District Court Did Not Abuse Its Discretion In Denying Appellant's Motion To The Amend The Complaint.

A denial of a motion for leave to amend is reviewed for abuse of discretion.

*See U.S. ex rel. Schumann v. Astrazeneca Pharms. L.P.*, 769 F.3d 837, 849 (3d Cir.

2014); *Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 217 (3d Cir. 2013); *In re

Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). Once a

scheduling order's deadline for amendment of pleadings has passed, the party

moving to amend pleading must first satisfy good cause standard of Rule 16(b); if

the movant satisfies that standard, they then must pass tests for amendment under

Rule 15(a). *Premier Comp Sols., LLC v. UPMC,* 970 F.3d 316, 319 (3d Cir. 2020).

Here, Appellant filed a Motion for Leave to Amend the Complaint on January

13, 2024, just ten days before trial began and more than a year after the operative

scheduling order's deadline for amendment had passed. (*See* A0990-1166).

Appellant sought to add claims under the Pennsylvania Human Relations Act

("PHRA") and the Philadelphia Fair Practices Ordinance ("PFPO").

The District Court did not abuse its discretion in determining that Appellant failed to establish good cause for his delay in seeking to amend the Complaint. (A1196-97, 1/23/2024 Tr. 6:20-7:5). The District Court undertook a detailed Rule 16 analysis of Appellant's basis for seeking relief to amend the Complaint properly noting that Appellant had "over a year" prior to trial to file a motion to amend and "so there was ample time" prior to trial. (A1197, 1/23/2024 Tr. 6:20-7:5). In his brief on appeal, Appellant fails to address or even mention the District Court's good cause analysis, instead arguing, in essence, that the individual defendants (Mr. Asaro and Mr. Spataro) participated in the litigation and therefore denying the motion to amend was "arbitrary" and unfair. (Ab25-26). These arguments do not remotely touch on the good cause analysis required by Rule 16. Accordingly, Appellant fails on appeal—as he did before the District Court—to establish good cause for his delay.

## A. Appellant's PHRA Claims Were Time-Barred And Therefore Amendment Would Have Been Futile.

Setting aside Appellant's failure to establish good cause for his delay, the District Court also properly concluded that Appellant's proposed new claims would have been futile. Futility of a proposed amendment, standing alone, may be sufficient reason to deny leave to amend. *See id.* "Futility" means that the complaint, as amended, would fail to meet the pleading standard under Rule 12(b)(6) or survive

a motion to dismiss. *Holst v. Oxman*, 290 F. App'x. 508, 510 (3d Cir. 2008).

The PHRA requires a plaintiff to file a charge "within one hundred eighty days after the alleged act of discrimination." 43 Pa. S.A. § 959(h); *Koslosky v. Am. Airlines, Inc.*, 456 F. Supp. 3d 681, 687 (E.D. Pa. 2020). Here, Appellant's counsel admitted that "if the charge was not filed within 180 days, [the PHRA claims] would be time-barred." (A1196, 1/23/2024 Tr. 5:12-22).  Appellant was terminated from his employment in or around August 2020. (*See* A1153, Pl.'s Proposed Am. Compl. ¶ 80). He filed a Charge of Discrimination with the EEOC and dual-filed with the PHRC on June 9, 2021. (A2828-2839, Charge of Discrimination). Even if Appellant was terminated on August 31, 2020 (the last day of the month), he did not file his Charge until 282 days after his termination, well past the 180-day limit. (*See* A1196, 1/23/24 Tr. 5:7-6:2).

Accordingly, the District Court correctly concluded the PHRA claims were time-barred and leave to amend would have been futile because they would not survive a motion to dismiss.

## B. Appellant Failed To Administratively Exhaust PFPO Claims And Therefore Amendment Would Have Been Futile.

Appellant's claims under the PFPO were similarly futile. A plaintiff must file a complaint with the Philadelphia Commission on Human Relations ("PCHR") before bringing a lawsuit alleging violations of the PFPO. *See* Phila. Code § 9-

1112(1) Phila. Code § 9-1122(1); *Smith v. RB Distribution, Inc.*, 498 F. Supp. 3d 645, 665 (E.D. Pa. 2020); *Peterkin v. Prospect Airport Servs. Inc.*, 2021 WL 2400753, at *51 (E.D. Pa. June 11, 2021); *Lee v. Bay, LLC*, 2023 2023 WL 1971209, at *3 (E.D. Pa. Feb. 13, 2023).

A plaintiff who merely files with the PHRC or EEOC has not administratively exhausted his PFPO claims because the PFPO lacks a provision that enables dual filing with another agency. *See Lee*, 2023 WL 1971209, at *9. The PFPO specifically bars the PCHR from accepting complaints from anyone who has filed a complaint with the PHRC. *See id.*; Phila. Code § 9-1112(4). Moreover, the PFPO contains no exception to its exhaustion requirement in situations where a plaintiff files with the PHRC or EEOC. *See Lee,* 2023 WL 1971209, at * 10.

Here, Appellant failed to file a complaint with the PCHR and thus failed to administratively exhaust any claims under the PFPO. Moreover, his PFPO claims are barred by his filing with the PHRC. *See Peterkin*, 2021 WL 2400753, at *51 ("[Plaintiff] dual-filed her charge of discrimination with the EEOC and the PHRC. . . . Her PFPO claims are barred by the filing of her PHRC charge[.]"); *Smith*, 498 F. Supp. 3d at 665 (granting defendant's motion to dismiss PFPO claims because plaintiff failed to administratively exhaust those claims).   Accordingly, leave to amend would have been futile as to all of Appellant's proposed Counts arising under the PFPO, and thus Appellant's motion to amend was properly denied.

### C. Granting Leave to Amend the Complaint At The Eleventh Hour Would Have Prejudiced Appellees.

Further, Appellees would have been prejudiced by Appellant's eleventh hour amended complaint because of the additional exposure to damages under the PHRA and PFPO. From the filing of Appellant's complaint on April 26, 2022 until the beginning of trial, this action proceeded under Title VII and ADEA, both of which are subject to statutory caps on damages. Just ten days before trial, Appellant sought to add PHRA and PFPO claims that would have permitted uncapped compensatory damages, additional legal or equitable relief as the court deems appropriate, and uncapped punitive damages. (*See generally See* A0990-1166).

The prospect of uncapped damages would have altered Appellees' budgeting, resource allocation, discovery plan (including increasing the number of deponents), summary judgment decisions (including the decision to file a summary judgment motion), settlement decisions, and trial strategy. *See Gregor v. Pickering Manor Home,* No. 07-2268, 2008 WL 2265271, at *3-4 (E.D. Pa. June 3, 2008) (Court recognized that eleventh hour additions of PHRA claims would prejudice defendants because of increased exposure); *see also Everage v. Nat'l Recovery Agency,* No. 14-2463, 2015 WL 1071757 at *32 (E.D. Pa. Mar. 11, 2015) ("Failure to amend a complaint until virtually the eve of trial, presents a situation where delay can only be viewed as undue."); *Richardson v. Frank*, No. 88-7325, 1989 WL 135379, at *2

(E.D. Pa. Nov. 8, 1989) (a "well-established example of circumstances where leave to amend will not be granted" is on the eve of trial); *Omogbehin v. Cino*, 485 F. App'x 606, 611-12 (3d Cir. 2012) (upholding district court's decision to deny plaintiff leave to amend because the "'delay in moving to amend, until the eve of trial, was undue.'")

Accordingly, because Appellant's eleventh-hour claims under the PHRA and PFPO would have prejudiced Appellees, the District Court did not abuse its discretion in denying Appellant's motion to amend the complaint.

## IV.  The Cumulative Error Doctrine Does Not Apply And, Even If It Did, Appellant Is Not Entitled To A New Trial.

Appellant argues that his "appeal should be granted on the cumulative error doctrine." (Ab28). In so arguing, Appellant cites to no supporting caselaw and instead generally summarizes his arguments on appeal, claiming that the cumulative effect of those alleged errors somehow deprived him of a fair trial. However, the Third Circuit has long "rejected the cumulative error doctrine in the context of a civil trial." *See Lockhart v. Westinghouse Credit Corporation*, 879 F.2d 43, 57 (3d Cir. 1989); *SEC v. Infinity Group Co.*, 212 F.3d 180, 196 (3d Cir. 2000); *Patterson v. United States*, 597 F. App'x 671, 675 (3d Cir. 2015). Accordingly, Appellant's argument in this regard is meritless, and in any case, none of the alleged errors deprived him of a fair trial.

**V.    The District Court Did Not Abuse Its Discretion In Denying Appellant's Motion to Disqualify Counsel.**

Last, Appellant lists as an issue on appeal "[w]hether the District Court erred by denying Appellant's Motion to Disqualify?" (Ab1). Appellant does not, however, address this issue in the "Summary of Argument" or "Argument" sections of his brief. (*See generally* Ab11-Ab30). Nor does he cite a single case to support his argument (located in his "Statement of the Case") that the District Court's denial of the motion to disqualify should be reversed. The District Court's denial of Appellant's motion to disqualify defense counsel is reviewed for abuse of discretion. *United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980).

By way of background, Appellant was represented by various attorneys at Derek Smith Law Group ("DSLG") throughout the pendency of this action. Erica Shikunov entered her appearance for Appellant on August 11, 2022, while she was employed by DSLG. (A0003, DE 13). The parties actively engaged in discovery in the months that followed, having an original discovery deadline of February 24, 2023. (A0003, DE 17). On January 17, 2023, Ms. Shikunov filed a motion to withdraw as Appellant's counsel and, eventually, the Court extended all applicable case deadlines to allow Appellant time to locate and secure new counsel. (A0003).

On January 26, 2023 (while the case was subject to the informal pause referenced above), Ms. Shikunov contacted Stephanie Peet to discuss a job

opportunity she had been offered (not at Jackson Lewis) and expressed her desire to leave DSLG. (A0193, Peet Aff. ¶6) During that call—for the first time—Ms. Peet raised whether Ms. Shikunov would be interested in joining Jackson Lewis as an associate attorney. (A0193, Peet Aff. ¶6). Jackson Lewis thereafter offered a job to Ms. Shikunov on January 30, 2023. (A0193, Peet Aff. ¶7).

On January 31, 2023, Ms. Shikunov accepted Jackson Lewis' job offer. (Peet Aff. ¶9). Between January 26, 2023 and February 13, 2023, while the case was informally stayed, Ms. Shikunov's communications with Ms. Peet and Timothy McCarthy (collectively, "Defense Counsel") in her role as counsel for Appellant were limited solely to discussing deposition dates. (A0156-160). On February 13, 2023, Ms. Shikunov advised Defense Counsel that Appellant was still searching for new counsel but that, if he was unable to locate a new firm to represent him, Seth Carson—another DSLG attorney— would represent Appellant. (A0156, February 13, 2023 E-mail from Ms. Shikunov). From that date forward, Defense Counsel communicated solely with Mr. Carson about this case.  On February 15, 2023, Mr. Carson entered his appearance as counsel for Appellant and Ms. Shikunov withdrew from the case. (*See* ECF Nos. 22, 23).

Ms. Shikunov commenced her employment at Jackson Lewis on February 27, 2023. (A0193, Peet Aff. ¶10).  That same day, Defense Counsel sent a letter to Mr. Carson informing him and Appellant, pursuant to Rule 1.10(b) of the Pennsylvania

Rules of Professional Conduct, "of the steps Jackson Lewis has taken with respect to Ms. Shikunov's employment with the firm." (A0163). The letter advised Mr. Carson that: (1) An ethical wall has been put in place to prevent Ms. Shikunov's involvement in this matter in any respect, preventing her Ms. Shikunov from accessing any documents related to this matter; (2) An ethical wall memorandum was sent instructing Ms. Shikunov that she is not to discuss or be involved in the firm's representation of Appellants in the *Williams* matter in any respect; (3) The Jackson Lewis attorneys working on the *Williams* matter were instructed not to discuss this matter with Ms. Shikunov; and (4)  Ms. Shikunov would not be apportioned any part of the fee from the firm's representation of Appellees.

### A. The District Court Did Not Abuse Its Discretion in Denying Appellant's Motion To Disqualify Defense Counsel.

In Pennsylvania, "[d]isqualification is a harsh measure and is generally disfavored." *Commonwealth Insurance Co. v. Graphix Hot Line, Inc.*, 808 F. Supp. 1200, 1203 (E.D. Pa. 1992). The moving party has the burden of demonstrating that opposing counsel must be disqualified, and such motions should only be granted when absolutely necessary. *Shade v. Great Lakes Dredge & Dock Co.*, 72 F. Supp. 2d 518, 520 (E.D. Pa. 1999); *Carlyle Towers Condo. Ass'n, Inc. v. Crossland Sav., FSB*, 944 F. Supp. 341, 345 (D.N.J. 1996)).

Here, Appellees' counsel strictly followed the requirements of Rule 1.10(b) of the Pennsylvania Rules of Professional Conduct, which requires that a disqualified lawyer be screened from participation in the matter and not receive any part of the fee therefrom, and that written notice be promptly given to the appropriate client. *See* Pa. R.P.C. 1.10(b).

Pennsylvania courts analyze the adequacy of a law firm's conflict protocol under Rule 1.10(b) by applying the factors identified in *Dworkin v. General Motors Corp.*, 906 F. Supp. 273 (E.D. Pa. 1995). *See Rudalavage v. PPL Elec. Utils. Corp.*, 268 A.3d 470 (Pa. Super. Ct. 2022). The *Dworkin* factors are: 1. the substantiality of the relationship between the attorney and the former client; 2. the time lapse between the matters in dispute; 3. the size of the firm and the number of disqualified attorneys; 4. the nature of the disqualified attorney's involvement; and 5. the timing of the implementation of an ethical wall. *Dworkin*, 906 F. Supp. at 279-80.

The District Court held an extensive hearing during which Appellant's counsel had the opportunity to question Ms. Shikunov on the record. (A0288, 4/26/23 Tr. 17:23-42:11). The District Court then applied the *Dworkin* factors and determined that, while certain factors weighed in favor of disqualification or were neutral, the analysis weighed more heavily in favor of not disqualifying Appellees' counsel. (A0288, 4/26/23 Tr. 78:13-85:25). The District Court correctly determined

that Appellees' counsel complied with Rule 1.10(b). (A0288, 4/26/23 Tr. 78:13-85:25).

As set forth above, immediately upon Ms. Shikunov's hiring, Jackson Lewis implemented an ethical wall to prevent her involvement in this case and which prevented her from accessing any documents related to the case; sent an ethical wall memorandum instructing Ms. Shikunov that she should not discuss or be involved in the firm's representation of Defendants in this matter in any respect; and instructed the lawyers working on this matter not to discuss the case with Ms. Shikunov. Defense counsel fully complied with this Rule when it hired and subsequently screened Ms. Shikunov from participation in this case. *See also* Pa. R.P.C. 1.0(k).

Under these facts which Appellant cannot dispute, disqualification was not warranted and the District Court did not err in its conclusion. *See Fetterman v. Cochran*, No. 1300 WDA 2021, 2022 Pa. Super. Unpub. LEXIS 2716, at *21 n.19, 2022 WL 16956537 (Pa. Super. Ct. Nov. 16, 2022) (denying motion to disqualify where there was no evidence the disqualified attorney "disclosed any privileged or confidential information" to his new firm and thereby did not violate Rule 1.10(b)); *see also Laborers Local 1298 Annuity Fund v. Grass (In re Rite Aid Corp Sec. Litig.)*, 139 F. Supp. 2d 649, 656 n.7 (E.D. Pa. 2001) (noting that even if a court finds that a violation of the rules has occurred, the question of whether disqualification is an appropriate sanction is resolved through a balancing of the various competing

interests).  Accordingly, the District Court did not abuse its discretion in denying Appellant's Motion to Disqualify.

## CONCLUSION

For the reasons set forth above, the District Court's rulings below and the judgment entered in Appellees' favor should be affirmed.

Respectfully submitted,

**JACKSON LEWIS P.C.**

By: /s/ Stephanie J. Peet
Stephanie J. Peet, Esq.
Jonathan R. Cavalier, Esq.
Timothy M. McCarthy, Esq.

*Attorneys for Defendants-Appellees*

Dated: February 26, 2025

## CERTIFICATION OF ADMISSION TO BAR

I, Stephanie J. Peet, hereby certify as follows:

1.     I am a member in good standing of the bar of the United States Court

of Appeals for the Third Circuit.

2.     Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that

the foregoing is true and correct.

_s/Stephanie J. Peet_
Stephanie J. Peet

Dated: February 26, 2025

## CERTIFICATION OF COMPLIANCE

I certify the following:

This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because it contains 7,960 words.

This brief complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the type style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure because this brief has been prepared in a proportionally spaced typeface using Word for Microsoft 365 in 14-point Times New Roman font.

This brief complies with the electronic filing requirements of Local Rule 31.1(c) because the text of this electronic brief is identical to the text of the paper copies, and a virus detection program Vipre Virus Protection, version 3.1 was run on the file containing the electronic version of this brief and no viruses have been detected.

*s/Stephanie J. Peet*
Stephanie J. Peet

Dated: February 26, 2025

## <u>CERTIFICATE OF SERVICE</u>

I, Stephanie J. Peet, hereby certify that on this 26th day of February 2025, a copy of the foregoing Answering Brief of Appellees was electronically filed with the Third Circuit Court of Appeals, and service was made upon counsel of record through the Court's electronic docketing system.

*<u>s/Stephanie J. Peet</u>*
Stephanie J. Peet

Dated: February 26, 2025