IN THE

# UNITED STATES COURT OF APPEALS

*for the*

# THIRD CIRCUIT

---

Appellate Case No. 24-1793

District Case No. 2:22-cv-01618-JDW

---

### CARL WILLIAMS

*Appellant,*

**– against –**

### LINODE LIMITED LIABILITY COMPANY
Individually and d/b/a/
LINODE, LLC
DANIEL SPATARO (individually)
TOM ASARO (individually)

*Appellees.*

---

ON APPEAL FROM AN ORDER OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA IN CASE NO. 2:22-cv-01618-JDW
HONORABLE JOSHUA D. WOLSON

**REPLY BRIEF OF APPELLANTS**

SETH D CARSON
1628 Packer Avenue
Philadelphia, Pennsylvania 19145
(474) 678-2210
Seth@CarsonLegalGroup.com
*Attorney for Plaintiff-Appellant*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ....................................................................................i

INTRODUCTION ..............................................................................................1

COUNTER STATEMENT OF FACTS ..............................................................3

ARGUMENT .......................................................................................................3

    A. The District Court abused its discretion by conducting a proper Rule 403 analysis in Response to Defendants' Motion in Limine (Appx. 527, pg. 6 of Defendants' Motion in Limine) while refusing to parse the issues in response to Plaintiff's Motion in Limine……………………………….3

    B. At the pretrial conference and during the trial the Court never performed a Rule 403 balancing analysis on the record, other than concluding in general that Rule 403 existed, and that the prejudicial information asserted by Defendants was permitted; the only restrictions the Court promised were lifted during the trial………………………………………………………………………….9

CONCLUSION .................................................................................................27

# TABLE OF CITATIONS

**Cases**

*United States v. Green*, No. 23-2476 (3d Cir. 2024)……………………………1

*Estes v. Texas*, 381 U.S. 532, 540 (1965)………………………………………..1

2 J. Story, Commentaries on the Constitution of the
United States 541 (4th ed. 1873))…………………………………………….…..1

*United States v. Cunningham*, 694 F.3d 372 (3d Cir. 2012)………………….2

*United States v. Curtin,* 489 F.3d 935, 937 (9th Cir.2007) (en banc)…………2

*United States v. Loughry*, 660 F.3d 965, 967-68 (7th Cir. 2011)……………..2

*United States v. Gonzalez–Flores*, 418 F.3d 1093, 1098 (9th Cir.2005)………2

## INTRODUCTION

Appellee, Linode Liability Company's ("Linode" or "Appellee"), Response fails to address the core issues on appeal—whether Appellant's fundamental right to a fair trial was violated by prejudicial and inflammatory information with no judicial oversight, regardless of relevance. The jury heard unsupported and false information intended to mislead and confuse. From the Appellee's opening to closing statements, a stream of highly prejudicial assertions and inflammatory information with little to no relevance was presented. *Contra, United States v. Green*, No. 23-2476 (3d Cir. 2024) ("Few guarantees are more central to our judicial system than the right to a fair trial by jury. It is 'the most fundamental of all freedoms'—'the great bulwark of [our] civil and political liberties.'" *Estes v. Texas*, 381 U.S. 532, 540 (1965); 2 J. Story, Commentaries on the Constitution of the United States 541 (4th ed. 1873)). The District Court permitted repeated assertions that Mr. Williams supported pedophilia, child pornography, sex crimes against children, and premeditated murder for hire of a child. This included the false accusations that Mr. Williams was under investigation by the FBI for these kinds of crimes, and that Mr. Williams had issues with child pornography. There was no evidentiary support for any of these assertions, because they were all false. Defendants took advantage of "evidence" that has been recognized by the Third Circuit as carrying an exceptionally high risk of unfair prejudice. The kind of evidence that can inflame the jury's emotions, leading to decisions based on passion rather than facts. The Federal Rule of Evidence 403 mandates the exclusion of evidence when its prejudicial impact substantially outweighs its probative value. In *United States v. Cunningham*, 694 F.3d 372 (3d Cir. 2012), the court addressed the admission of evidence related to child exploitation. The Third Circuit

emphasized that while such evidence might have some probative value, its potential to cause unfair prejudice is immense. The court noted that jurors could be so emotionally charged by the nature of the allegations that they might convict based on emotion rather than evidence. The Third Circuit took note of

>  *United States v. Curtin,* 489 F.3d 935, 937 (9th Cir.2007) (en banc) where [t]he Ninth Circuit [held] as a matter of law that a court does not properly exercise its balancing discretion under Rule 403 when it fails to place on the scales and personally examine and evaluate *all* that it must weigh" *Id.* at 958.

The Third Circuit also relied on *United States v. Loughry*, 660 F.3d 965, 967-68 (7th Cir. 2011) reversed, "emphasiz[ing] that a district court, in exercising its discretion under Rule 403, must carefully analyze and assess the prejudicial effect of challenged evidence." *Id*. at 971. The Third Circuit's decision in United States v. Cunningham also included reference to

> *United States v. Gonzalez–Flores*, 418 F.3d 1093, 1098 (9th Cir.2005) ("Where the evidence is of very slight (if any) probative value, it's an abuse of discretion to admit it if there's even a modest likelihood of unfair prejudice or a small risk of misleading the jury.")).

All of these cases involved attempts to use highly inflammatory evidence involving crimes against children against the perpetrators of those crimes. In the case of *Carl Williams v. Linode*, Mr. Williams was acknowledged by the District Court of New Jersey as having a positive influence on Mr. Musbach and there being no connection to criminal activities. Defendants sought to use the crimes of Mr. Musbach against Mr. Williams through guilt by association. Despite repeated motions and objections, the Court refused to protect Mr. Williams' right to a fair trial.

2

# COUNTER STATEMENT OF FACTS

The following is Appellant, Carl Williams counter statement of facts, and response to the false assertions Appellees presented. Defendants' suggestion that there was no legal or factual basis for Mr. Williams' claims is not supported by the record. Defendants did not bother filing a dispositive motion or persuade the granting of judgement as a matter of law. The case went to the jury. There was no evidence that Mr. Williams supported the behavior of a "convicted felon." It was undisputed that Carl Williams engaged reported and opposed discrimination and retaliation. Carl Williams did not take time off from work to testify in support of Mr. Musbach. All criminal charges filed against Mr. Musbach were for conduct that predated his friendship with Carl Williams. Defendants knew that Carl Williams and John Musbach were friends the entire time. For several years beginning with the date of Mr. Williams' termination, Linode denied the very assertions Linode relied upon at trial.

# ARGUMENT

**A. The District Court abused its discretion by conducting a proper Rule 403 analysis in Response to Defendants' Motion in Limine (Appx. 527, pg. 6 of Defendants' Motion in Limine) while refusing to parse the issues in response to Plaintiff's Motion in Limine.**

Plaintiff's attempts to secure a fair trial began with his Motion in Limine. (Appx. 531-867). Appellant moved to exclude specific and highly prejudicial statements like use of the word "pedophile." There was no probative value in permitting Defendants to repeatedly call Carl Williams and/or John Musbach a pedophile. The law does not recognize this word. The term "pedophile" has evolved beyond its clinical definition to become a potent epithet in contemporary discourse, particularly within political arenas and the entertainment industry. Accusations or insinuations involving pedophilia are often employed to delegitimize,

3

marginalize, or discredit individuals and groups. And the repeated use of terms like "pedophile" and "child pornography" throughout the trial had an overwhelming prejudicial effect, turning the jury's focus toward unfounded suspicions and moral outrage. See Appx. 2175:20-23 ("Carl was fired because of his public support of someone, an ex-employee, that was in trouble for being a pedophile and accused of attempting murder of a 13-year-old."). See Appx. 2175:24 ("He was found with child porn on his work laptop."). See Appx. 2176:4-5 ("A pedophile is somebody who gets off sexually with kids, but it doesn't need to be sex."). See Appx. 2177:5-6 ("He was found with child porn on his laptop. To me, that's a pedophile."). See Appx. 2395:7-10 ("I knew that he was someone that worked at Linode, got caught with using the company laptop to have a relationship or prey on a child. You know, people at work would say what a creepy pedophile he was."). See Appx. 2401:18 ("Yeah. Why would he bring up the creepy pedophile guy?"). See Appx. 2456:24-25 ("John Musbach at the time was that he was the pedophile guy at work that got caught using his company laptop"). See Appx. 2670:15-18 ("And I submit to you that his reaction under these circumstances is eminently reasonable, right? I mean, look, whether you think it's fair or unfair, the guy doesn't want to work next to somebody who hangs with a pedophile."). See Appx. 2681:5-7 ("And Mr. Spataro is entitled under the law, given his personal preferences to not work with people who associate with pedophiles"). See Appx. 1264:1-6 ("he had appeared at the hearing in support of Mr. Musbach, and that he had long known about Mr. Williams'(sic) issues with child pornography, but that he had, at least to that point, been unaware of Mr. Musbach's attempts to have his victim killed."). See Appx. 2065 ("Through an article that was published that stated Mr. Williams was testifying on behalf of Mr.

4

Musbach in court and was aware of his past issues with child pornography."). See Appx. 2111:18-62 ("Did you have any reason to believe that this was anything other than what it appeared to be on its face to you, which was that Mr. Williams was testifying in support of someone and acknowledging his prior awareness of his paramour's child pornography issues?"). The Court overruled Plaintiff's objection based on leading here, to this obviously leading question. *Id*. See Appx. 2488 ("involved with, living with, a partner with, the person at Linode that got publicly busted for using their company laptop for child pornography or preying on a child, the reasons. And it just, just really hit me hard."). Defendants told the jury that Carl Williams supported the behavior of John Musbach at least 15 times during the trial. (Appx. 1264:2, 18, 18, 1265:6 and 12, 1266:18, 2067:18, 2068:9, 2111:18-22, 2175:20, 2177:7-9. 2192:5, 2192:1-16, 2488:5). The jury was invited to decide the case on an improper basis—guilt by association—rather than evaluating the evidence properly. The trial court failed to issue any limiting instruction, even after repeated objections and motions. This compounded the prejudice, as the jury had no guidance to disregard the improper use of evidence and arguments. The court's refusal to intervene effectively endorsed the defense's strategy of inflaming the jury's emotions rather than focusing on the evidence. The refusal to apply a Rule 403 analysis in response to Plaintiff's Motion in Limine opened the door for inflammatory epithets to be used at trial. Plaintiff was in an impossible position where any response was detrimental. Ignoring the allegations of pedophilia would have been noted, and responding to the allegations, forced Plaintiff to defend criminal activity to which he had no connection to, did not condone or support. (Appx. 2175:17 – 2177:9). Tom Asaro testified that Mr. Willians was terminated for "supporting" lied and stated that Mr. Musbach was

5

"caught with child porn on his work laptop." (Appx. 2175:74 and 2177:5). This lie was parroted by several Linode witnesses. There was never any evidence of child pornography on a Linode computer. This lie was told under oath, leaving Mr. Williams unable to refute the information during the trial, as Defendants did not produce evidence of this during discovery and Mr. Williams did not know Mr. Musbach when the events occurred. Moreover, the earlier crimes had no probative value as Linode knew of the criminal charges over four (4) years prior to the termination of Mr. Williams. Defendants produced no evidence to support the assertion that child pornography was found on a Linode computer. There certainly would have been documents to confirm this kind of inflammatory statement had the FBI found evidence of child pornography on a Linode computer. Notwithstanding, there was no probative value to this information. Mr. Musbach was charged with the first set of offenses in 2015, five (5) years before Carl Williams' termination. The false assertion was sponsored by Tom Asaro, the Chief Operating Officer ("COO") and number-2 corporate executive who founded the company with Chris Akers. This was the kind of evidence that failed a 403 balancing analysis that Appellant moved to exclude in his Motion in Limine. False accusations about Mr. Musbach's earlier criminal past. The false accusation that Mr. Williams supported Musbach's crimes. Appellant also moved to exclude evidence related to events that occurred after the termination that had no probative value, like Mr. Musbach's prison sentence and plea agreement. These events occurred more than two years after Mr. Williams' employment with Linode ended. Mr. Musbach also moved to exclude the opinion testimony of Dan Spataro, Tom Asaro and Vince Palochko, and their thoughts and ideas about Mr. Musbach's crimes. None of this information was probative to the defense, that the

6

reason Mr. Williams was terminated was because of a fear of bad publicity and the hearsay statements of employees that made inflammatory statements about Mr. Williams. Defendants were permitted to present at trial. Appellant filed a Motion in Limine, made motions during the pretrial conference, submitted a Motion during the trial, and objected throughout the trial. The District Court denied every one of Plaintiff's requests regarding the exclusion of non-probative, highly prejudicial statements and reference to criminal activities of John Musbach. The Court did not base the denial on a reasons Rule 403 balancing analysis, like the one the Court performed in the same Order and Opinion in Response to Defendants Motion. Instead, the Court stated that it just could not perform a Rule 403 analysis at that time. See Appx. 894 ("At this stage, I can't parse what about Mr. Musbach will and won't come in during Defendants' cross-examinations or case in-chief. That's not to say that during the trial there won't be limits for the Defendants."). The Court acknowledged the "charged nature of the evidence" and left open the possibility of excluding specific testimony under Rule 403 as it arose during trial. This ruling effectively allowed the defense to introduce Musbach's criminal background while setting a vague standard for limiting unfair prejudice. The Court recognized the risk of prejudice but did nothing meaningful to mitigate it. Despite stating that this "is not about Musbach," the court allowed highly prejudicial and inflammatory references throughout the trial. The lack of limiting instructions allowed the defense to exploit an irrelevant and misleading narrative. The Court's Own Standard Contradicts Its Ruling. The judge stated that evidence about Musbach should be limited to what "impacted their thinking at the time of the termination." Yet, the record (including HR recordings and depositions) shows Linode repeatedly denied that Musbach had anything to do with Carl's termination.

7

Therefore, the defense's justification was pretextual, and the court should have excluded the references. The court abdicated its duty under Rule 403 by deferring the issue instead of conducting the required balancing test before the trial. The judge's statement—"At this stage, I can't parse what about Mr. Musbach will and won't come in"—is not a proper Rule 403 analysis and left the door wide open for Defendants to exploit. Plaintiff's Motion in Limine was a clear Rule 403 issue and should have been an easy decision. Plaintiff asked simply that Defendants not be permitted to use inflammatory language, like "pedophile" and "child pornography." The court refused to parse the issues – i.e., the risk of unfair prejudice versus the probative value. In the same Order there is a reasoned and detailed 403 analyses in response to Defendants' Motion. This inconsistency highlights the asymmetry in the court's rulings—when it came to protecting the Defendant, the court had no problem making clear, specific evidentiary rulings. But when Plaintiff sought a simple and necessary limitation on inflammatory language, the court suddenly couldn't "parse" what was appropriate. The imbalance is a structural error that cannot be ignored and provides a basis for appellate intervention. The Court's failure was Not Just a Mistake—It Was a Breakdown in Fair Trial Protections. The record demonstrates that Plaintiff's issue is not simply Plaintiff's disagreement with an alleged improper Rule 403 analysis, but the Court's refusal to even apply Rule 403, when faced with the exact issues Rule 403 was promulgated to prevent. The record also shows that the Court applied Rule selectively to protect the defense from even minor prejudicial evidence while permitting one of the most inflammatory, misleading, and damaging accusations, as a matter of law to be used against a Plaintiff with no connection to

8

that kind of behavior. This double standard undermined the integrity of the trial and requires reversal. Today, the record confirms that the Court did not place any limits for Defendants.

**B. At the pretrial conference and during the trial the Court never performed a Rule 403 balancing analysis on the record, other than concluding in general that Rule 403 existed, and that the prejudicial information asserted by Defendants was permitted; the only restrictions the Court promised were lifted during the trial.**

At no time during the pretrial conference did the Court conduct a proper 403 analysis. The trial was about child murder, child pornography, pedophiles, and whether Mr. Williams supported this reprehensible behavior. The jury was permitted to consider whether Mr. Williams supported Mr. Musbach's crimes. Tom Asaro provided a glimpse into Defendants' trial strategy when he asked the jury to attribute the crimes of Mr. Musbach to Carl Williams. (See Appx. 2232, lines 19-25). ("Q. Are you honestly sitting on that stand under oath and suggesting to the jury that the behavior of John Musbach is somehow attributable to Carl Williams? Is that what you're doing up there, sir? A. Yes. Q. That's what you said, yes? A. Yes."). Defense counsel's statements at the pretrial conference also confirmed this objective, when the Court was informed that the crimes committed by Mr. Musbach occurred during the same time period as some 401k loans borrowed by Mr. Williams. Counsel stated this suggested a "deeper relationship" indicating that Mr. Williams helped finance the attempted murder. *See Infra*. There were three instances where the Court agreed with Plaintiff's arguments and ruled that Appellee would not be permitted to introduce non-probative, prejudicial information. The first was the criminal plea of John Musbach years after the termination. The second was that the admission of the hearsay article (Exhibit 24) would not be for the truth of the matter asserted. The third was Defendant's attempt to have Vincent Palochko sponsor false testimony about a memory he denied having during his deposition, to

9

implicate Mr. Williams in Mr. Musbach's crimes. In all three instances, the Court reversed course and allowed the jury to hear the irrelevant, inflammatory and prejudicial information, or declined to provide the jury with instructions. By trial-end, the Court disregarded these three rulings. The jury never knew that the article was not admitted for its truth. The jury received no guidance or instruction in connection with the constant barrage of false and misleading information about Mr. Williams. As Mr. Cavalier finished his opening statement and sat down, the room was silent. In the silence, the words of Mr. Cavalier were felt throughout the room, that Mr. Williams supported a pedophile. Mr. Cavalier told the jury that when Carl Williams was terminated, he was under investigation by the FBI because of the same issues surrounding attempted murder of a child. Mr. Cavalier told the jury that multiple Linode employees, none of whom were named or testified, approached HR Executive Vincent Palochko and refused to continue their employment unless Mr. Williams was fired. Plaintiff objected to the hearsay and was overruled. Defendants were permitted to testify about self-serving statements made by unnamed people, at unnamed times. Mr. Cavalier delivered a false and misleading opening statement that would prevent most people from giving money to the person it was about. Appellant's hearsay objections were denied without justification. The jury heard the out-of-court statements of unnamed, unidentified, individuals who stated that they "were uncomfortable working with someone like *Mr. Williams, who might support this type of behavior*." (Appx. 2067:13-25). The words put into the mouths of these unnamed individuals included ultimatums that either Mr. Williams or they leave Linode. Linode was unable or refused to produce a single electronic message where any employee said any of these things, at a company that predominately used electronic messages to communicate. But again,

10

the information told to the jury was that Mr. Williams "supported" child pornography, child murder, and pedophilia. There was no evidence that suggested Mr. Williams supported sex crimes and killing of children. Nonetheless, Linode was allowed to tell this to the jury repeatedly from the opening to closing statement and consistently between.

The Federal Rules of Evidence excluding hearsay were disregarded several times so that inflammatory, prejudicial information could be admitted and shown to the jury. Exhibit 24 was admitted despite it being inadmissible hearsay. Defense counsel and the Court agreed it would not be admitted for its truth. (Appx. 962). The article was then admitted for its truth with no instruction at all. (Appx. 2061:1– 2067:24). At the same time the trial Court ruled unequivocally that the plea agreement that occurred years after the termination "was out." *See* Appx. 964, lines 14-23) ("THE COURT: Right. So 26 is out."). The Court reaffirmed this ruling on Day-1 of the trial. (Appx. 1301 lines 1-9).

Defendants were permitted to make apparently false statements to the jury repeatedly and the jury, which was acknowledged by the District Court in the Opinion in Response to Plaintiff's Motion for New Trial. (Appx 2815). The jury was told that the FBI was investigating Carl Williams as part of the Musbach investigation and that Linode had to terminate Mr. Willimas because of an ongoing investigation into Mr. Williams. This was directly after the jury was told of "***Mr. Williams' issues with child pornography***…" (emphasis added). (Appx 1264 – 1266 lines 1 – 25). The Court stated that John Musbach's shadow loomed large over the trial. (Appx 2815). A person who had no connection to the trial, could not have testified about any relevant issue, played a crucial role in the trial he did not attend. The question on the jury's minds was whether Carl Williams was part of Mr. Musbach's

11

crimes, and not whether Linode had a legitimate right to terminate Mr. Williams. Linode's strategy worked. Linode made their strategy clear at the pretrial conference when Mr. Cavalier told the trial Court that Vince Palochko planned to testify about a false memory of Carl Williams borrowing money against his 401k during the same time period while Mr. Musbach was sending bitcoin to the Baffa Mafia website. (Appx. 965 – 969 lines 9-24.). The Court repeatedly recognized the high risk of prejudice while allowing unchecked inflammatory rhetoric. By repeatedly using language like "pedophile" and "child pornography" jury was invited to conflate Carl with Musbach, creating an extreme risk of a verdict based on moral outrage rather than legal standards. This turned an age discrimination trial into a morality trial by association, which is precisely what Rule 403 is meant to prevent.

**CONCLUSION**

For the reasons set forth in Appellant's Brief and Appendixes and this Reply, Appellant requests that his appeal be granted, as his right to a fair trial was violated.

> Respectfully submitted,
> */s/ Seth D. Carson*
> Seth D. Carson